IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KELSEY KALLMYER, *On behalf of herself and all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> CAPITAL GRILLE OF MARYLAND, LLC, *et al.*, <br><br> Defendants. | Civil Action No. 8:24-cv-01273-LKG <br><br> Dated: July 3, 2025 |

## MEMORANDUM OPINION

### I.   INTRODUCTION

The Plaintiffs: (1) Kelsey Kallmyer, (2) Loylia Barnaby, (3) Christian Cabiedes, (4) AJ Crespin, (5) Mercedes Desmangles, (6) Luigi Dicanio, (7) Justine Enriquez, (8) Deshon Ford, (9) Melissa Heffernan, (10) Cortney Jump, (11) Amy Kennedy, (12) Destiny Lamar, (13) Jason Maldonado, (14) Marlenny Marte, (15) Nicolas Santander, (16) Janei Sewell, and (17) Kiphanie Thurman (collectively, "Plaintiffs"), allege in this civil action that the Defendants, Capital Grille of Maryland, LLC and Capital Grille Holdings, Inc., failed to pay them the applicable minimum wage in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann. Lab. & Empl. §§ 3-401 to 431. *See generally* ECF No. 1.

On May 5, 2025, the Plaintiffs filed a consent motion for the approval of their FLSA settlement (the "Settlement Agreement") which would resolve these claims, allow the Plaintiffs to recover a total of $8,867.60 in damages, and award $5,000.00 in attorneys' fees and $1,132.40 in costs to Plaintiffs' counsel. *See* ECF No. 44 at 5; *see also* 29 U.S.C. § 216(b) (requiring Court approval to release FLSA claims brought by an employee in a private right of action).

The Court held a fairness hearing on the parties' proposed Settlement Agreement on July 2, 2025. ECF No. 46. For the reasons set forth below, and stated during the fairness hearing, the

Court: (1) **GRANTS** the Plaintiffs' consent motion for approval of the Settlement Agreement (ECF No. 44); (2) **APPROVES** the Settlement Agreement; (3) **AWARDS** the Plaintiffs' **$8,867.60** in damages; and (4) **AWARDS** Plaintiffs' counsel of **$5,000.00** in attorneys' fees and **$1,132.40** in costs.

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A. Factual Background

In this civil action, the Plaintiffs allege that the Defendants improperly used the FLSA's tip credit to pay their employees below the minimum wage, in violation of the FLSA and MWHL. *See generally* ECF No. 1. Specifically, the Plaintiffs allege that they were frequently required to perform non-tip generating duties, during which they did not interact with customers and could not earn tips, but the Defendants did not pay them the full minimum wage rate for this work. *Id.* at ¶¶ 32, 34 and 39. And so, the Plaintiffs seek to recover, among other things, unpaid wages with minimum wage compensation unadulterated by the tip credit, liquidated damages, all misappropriated funds including all tips, expenses and wages wrongfully withheld and attorneys' fees and costs. *Id.* at Prayer for Relief.

<u>The Parties</u>

Plaintiffs Kelsey Kallmyer, Loylia Barnaby, Christian Cabiedes, AJ Crespin, Mercedes Desmangles, Luigi Dicanio, Justine Enriquez, Deshon Ford, Melissa Heffernan, Cortney Jump, Amy Kennedy, Destiny Lamar, Jason Maldonado, Marlenny Marte, Nicolas Santander, Janei Sewell and Kiphanie Thurman, were employed by the Defendants as tipped employees at all times relevant to this case. *See* ECF No. 44-1 at 2.

Defendant Capital Grille of Maryland, LLC is a domestic limited liability company organized under the laws of Maryland. ECF No. 1 at ¶ 15.

Defendant Capital Grille Holdings, Inc. is a foreign corporation organized under the laws of North Carolina. *Id.* at ¶ 16.

---

[1] The facts recited in this memorandum opinion are derived from the complaint, the Plaintiffs' consent motion for approval of the Settlement Agreement, the Settlement Agreement and Attorney Lori Griffin's Declaration and Amended Declaration. ECF Nos. 1, 44, 44-1, 44-2 and 47.

### The Plaintiffs' Allegations

As background, the Plaintiffs allege that the Defendants improperly utilized the FLSA's tip credit by paying them less than the minimum wage rate for work that they performed, which did not provide them with the opportunity to receive tips. *See generally* ECF No. 1; *see* ECF No. 44-1 at 2. Specifically, the Plaintiffs allege that the Defendants maintained a policy and practice whereby tipped employees were required to perform "non-tip producing side work" unrelated to the employees' tipped occupation, such as: cleaning ledges; cleaning the kitchen; cleaning walls and items hanging on the walls; cleaning window blinds, windows and windowsills; cleaning the bathrooms; and/or washing trays, appliances, silverware, dishes and/or glasses. ECF No. 1 at ¶¶ 34-35.

In addition, the Plaintiffs allege that the Defendants maintained a policy and practice whereby tipped employees were required to spend a substantial amount of time, in excess of 20 percent and/or for a continuous period of time in excess of 30 minutes, performing "non-tip producing directly supporting work," such as: leaning and stocking the serving line; cleaning booths, chairs, high chairs and booster seats; cleaning menus; cleaning soft drink dispensers and nozzles; cleaning tables; filling and cleaning ketchup and syrup bottles; filling and cleaning salt and pepper shakers; replacing soft drink syrups; rolling silverware; setting tables; stocking ice; sweeping, cleaning and mopping floors; taking dishes and glasses from the tables to the kitchen; and/or taking out trash. *Id*. at ¶ 37. And so, the Plaintiffs contend that, as a result of the Defendants' policies and practices, the Defendants required the Plaintiffs to perform non-tip producing work, but the Defendants did not pay their tipped employees the full minimum wage rate for this work. *Id*. at ¶ 39.

### The Settlement Agreement

On May 5, 2025, the Plaintiffs filed a consent motion to approve the Settlement Agreement. ECF No. 44. The Settlement Agreement provides that, upon the Court's approval, the Defendants shall pay $15,000.00 to the Plaintiffs and Plaintiffs' counsel to resolve all claims in this matter. ECF No. 44 at 4. Under the terms of the Settlement Agreement, the $15,000.00 payment is to be apportioned as follows: (1) $8,867.60 will be divided into Individual Settlement Payments to the 17 Plaintiffs in this matter, to reflect each Plaintiff's alleged damages for purportedly unpaid minimum wages to that Plaintiff; (2) an award of $5,000.00 in attorneys' fees to the Plaintiffs' counsel; and (3) an award of $1,132.40 in costs to Plaintiffs' counsel. *Id*. at 5.

The Settlement Agreement further provides that the $8,867.60 damages amount will be divided into Individual Settlement Payments for each Plaintiff, "as calculated by determining each Plaintiff's proportionate share of the settlement based upon the number of hours each Plaintiff worked in a tipped position(s) in proportion to all the hours all Plaintiffs worked in a tipped position(s) during the Settlement Period … and in recognition of Plaintiffs' claims for liquidated damages, each Plaintiff's settlement payment shall be paid as 50% W-2 wages and 50% 1099 non-wage income."  ECF No. 44-1 ¶ 3.  The chart below shows the payments that each Plaintiff will receive under the Settlement Agreement:

| Plaintiff No. | Name | W2 | 1099 | State |
|---|---|---|---|---|
| 1 | Kelsey Kallmyer | $582.35 | $582.35 | MD |
| 2 | Loylia Barnaby | $460.17 | $460.17 | NY |
| 3 | AJ Crespin | $268.77 | $268.77 | AZ |
| 4 | Melissa Heffernan | $432.16 | $432.16 | AL |
| 5 | Cortney Jump | $526.55 | $526.55 | FL |
| 6 | Amy Kennedy | $598.26 | $598.26 | FL |
| 7 | Destiny Lamar | $154.08 | $154.08 | MD |
| 8 | Jason Maldonado | $515.18 | $515.18 | FL |
| 9 | Marlenny Marte | $293.77 | $293.77 | NY |
| 10 | Nicolas Santander | $101.30 | $101.30 | NC |
| 11 | Kiphanie Thurman | $351.20 | $351.21 | NY |
| 12 | Christin Cabiedes | $25.00 | $25.00 | FL |
| 13 | Mercedes Desmangles | $25.00 | $25.00 | NY |
| 14 | Luigi Dicanio | $25.00 | $25.00 | FL |
| 15 | Justine Enriquez | $25.00 | $25.00 | TX |
| 16 | Deshon Ford | $25.00 | $25.00 | TX |
| 17 | Janei Sewell | $25.00 | $25.00 | GA |

ECF No. 44-1 at 15.

Attorneys' Fees and Costs

The Settlement Agreement further provides for an award of attorneys' fees in the amount of $5,000.00.  ECF No. 44 at 5.  The parties assert that the award of attorneys' fees is reasonable, in light of the benefit achieved for the Plaintiffs and is significantly less than Plaintiffs' counsel's lodestar calculation.  *See* ECF No. 44 at 5; ECF No. 44-2 at ¶ 41.  In this regard, Attorney Lori M. Griffin, Counsel for the Plaintiffs, asserts that the Lazzaro Law Firm has incurred the following number of hours at the corresponding hourly rates of pay: Attorney Anthony J.

4

Lazzaro has spent 15 hours at a rate of $500.00 per hour; and Attorney Lori M. Griffin has spent 20 hours at $475.00 per hour. ECF No. 44-2 at ¶ 45.

Plaintiffs' counsel also represent that they have spent "over two years" working on this case, during which time, Plaintiff Kallmyer filed the complaint in this action on April 30, 2024, counsel have reviewed the Plaintiffs' time and pay records, engaged in discussions regarding the calculations of damages, discussed the basis for the Plaintiffs' claims and the Defendants' defenses to such claims and engaged in settlement negotiations. ECF No. 44 at 4 and 9. Lastly, Attorney Griffin represents to the Court that "[t]he hourly rates of Attorney Lazzaro and Attorney Griffin are reasonable and are the customary rates for attorneys with the corresponding experience in Ohio and have been approved by several courts within the Ohio District Courts and other Sixth Circuit courts." *See* ECF No. 47 at ¶ 46 (citing cases within Ohio district courts and other Sixth Circuit courts where the hourly rates of Attorney Lazarro and Attorney Griffin have been approved).

Lastly, the Settlement Agreement also includes an award of costs in the amount of $1,132.40 to cover the following expenses:

- $405.00 incurred for the filing of the Complaint;
- $100.00 for the filing of Lori M. Griffin's Pro Hac Vice Motion;
- $52.40 for miscellaneous litigation expenses; and
- $575.00 for a public records search.

ECF No. 44-2 at ¶ 46; ECF No. 44 at 5 and 19.

The Settlement's Release Provision

By accepting the payment pursuant to the Settlement Agreement, "each Plaintiff releases and discharges Defendants, as well as all of their past and present, officers, directors, agents, employees, parents …, subsidiaries, affiliates … predecessors, successors, assigns, insurers, vendors, joint employers and compensation and benefit plans and administrators, trustees, fiduciaries, and insurers of such compensation and benefits plans [the "Released Parties"], from claims and causes of action detailed in this Paragraph, save and except any legal claim or proceeding brought to enforce this Settlement." ECF No. 44-1 at ¶ 8. Specifically, the claims released by each of the Plaintiffs include, but are not limited to:

5

> (i)       any and all claims asserted in the Lawsuit;
>
> (ii)      any and all claims for unpaid wages, minimum wages, overtime, late payment of wages, improper deductions, or any other wage-related claims, damages or relief of any kind, including recordkeeping related to wages, and including but not limited to those arising under the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq., the Maryland Wage and Hour Law, and any other equivalent federal, state, and local statutes or ordinances;
>
> (iii)     any and all claims under federal, state, and local law for earned wages, overtime, missed or interrupted meal breaks, and/or deductions from pay, including such claims for breach of express contract or labor agreement, implied contract, money had and received in assumpsit, quantum meruit/unjust enrichment, equitable estoppel, promissory estoppel, conversion, and/or failure to keep accurate records; and
>
> (iv)      any and all wage and hour laws or wage-related claims of any kind under other laws, including but not limited to any and all such claims pursuant to other federal, local, or other states' laws and/or regulations from the beginning of time through the date of the execution of this Agreement.

*Id*. The Plaintiffs also agree that they will not "knowingly seek reinstatement, future employment, or return to active status" with the Released Parties. In addition, the Defendants "deny any liability relating to any acts or omissions giving rise to this Agreement." *Id*. at ¶ 9.

The Settlement Procedure

The Settlement Agreement also sets forth the following procedures for payment of the settlement amount:

- **Effective Date.** The settlement embodied in this Agreement shall become effective only when all of the following events have occurred: (i) this Agreement has been executed by all Plaintiffs and by Plaintiffs' Counsel; (ii) this Agreement has been executed by Defendants; (iii) this Agreement has been submitted to the court for approval; and (iv) the court enters its Approval Order, approving the Agreement submitted by the Parties.

- **Funding by Defendants.** No later than twenty (20) business days following the Effective Date, Defendants shall issue the Settlement Award Checks for the Plaintiffs in the amounts listed in Exhibit 1 to Plaintiffs' Counsel who will be responsible for distributing them. The Attorneys' Fees and Costs payment to Plaintiffs' Counsel shall also be paid to Plaintiffs' Counsel no later than twenty (20) business days following the Effective Date.

- **Issuance of Checks.** Plaintiffs' Counsel shall be responsible for mailing the settlement checks ("Settlement Award Checks") to all Plaintiffs listed on Exhibit 1 within fifteen (15) business days after Defendants provide the Settlement Award Checks to Plaintiffs' Counsel.

- **Ninety-Day Check Period.** All Settlement Award Checks shall remain valid and negotiable for ninety (90) days from the date of their issuance (the "Ninety-Day Check Period") and may thereafter automatically be canceled if not cashed within that time. For any Settlement Award Checks not cashed within the Ninety-Day Check Period, Defendants will, upon request made within five (5) business days thereafter, reissue such Settlement Award Checks once for one additional ninety-day period.

- Any Settlement Award Check returned with a forwarding address shall be re-mailed by Plaintiffs' Counsel within five (5) business days following receipt of the returned mail. If any Settlement Award Check is returned without a forwarding address, Plaintiffs' Counsel shall undertake reasonable efforts such as skip traces to search for the correct address within seven (7) business days, and shall re-mail the Settlement Award Check to any newly found addresses.

- **Final Report by Counsel.** Within five (5) business days after the Ninety-Day Check Period, Plaintiffs' Counsel shall confirm the total number of Plaintiffs who were sent the Notice and Settlement Award Check; and Defendants shall confirm the total number of Plaintiffs who cashed the Settlement Award Check.

- If at the conclusion of the Ninety-Day Check Period there are any monies remaining, those remaining monies shall revert to Defendants. No person shall have any claim against the Released Parties, Named Plaintiff, Plaintiffs, Plaintiffs' Counsel, or Defendants' Counsel based on distributions or payments made in accordance with this Settlement.

*Id*. at ¶¶ 14-20.

### B.      Procedural Background

Plaintiff Kallmyer filed the complaint in this matter on April 30, 2024. ECF No. 1. On May 5, 2025, the Plaintiffs filed a consent motion to approve the Settlement Agreement. ECF No. 44. On July 2, 2025, the Court held a fairness hearing. ECF No. 46.

### III. LEGAL STANDARDS

#### A. The Fair Labor Standards Act

Congress enacted the FLSA to protect workers from poor wages and long hours that can result from substantial inequalities in bargaining power between employers and employees. *See* S. Rep. No. 884, at 3-4 (1937); H.R. Rep. No. 1452, at 9 (1937); *see also Duprey v. Scotts Co.*, 30 F. Supp. 3d 404, 407 (D. Md. 2014); *Saman v. LBDP, Inc.*, 2013 WL 2949047, at *2 (D. Md. June 13, 2013). The FLSA provides that "no employer shall pay to each of his employees" less than $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). Section 3(m)(2)(A) of the FLSA allows an employer to satisfy a portion of its minimum wage obligation to a "tipped employee" by taking a partial credit, known as a "tip credit," toward the minimum wage, based on the amount of tips an employee receives provided that the employer meets certain requirements. *See* 29 U.S.C. 203(m)(2)(A). The FLSA defines a "tipped employee" as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t); *see also* 29 C.F.R. § 531.56(a). An employer that elects to take a tip credit must pay the tipped employee a direct cash wage of at least $2.13 per hour and the employer may then take a credit against its wage obligation for the difference, up to $5.12 per hour, if the employees' tips are sufficient to fulfill the remainder of the minimum wage. *Id*; *see* Tip Regulations Under the Fair Labor Standards Act (FLSA); Partial Withdrawal, published October 29, 2021. In this regard, the Department of Labor provides the following regulation regarding the compensation for tipped employees:

> In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. … Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

29 C.F.R. § 531.56(e).

8

The FLSA's provisions are mandatory and generally are not subject to bargaining, waiver, or modification by contract or settlement. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706-07 (1945). A Court-approved settlement is an exception to this rule. 29 U.S.C. § 216(b); *Duprey*, 30 F. Supp. 3d at 407. The Court may approve a settlement of an FLSA claim, "provided that the settlement reflects a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Saman*, 2013 WL 299047, at *2 (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)). While the United States Court of Appeals for the Fourth Circuit has not directly addressed the factors to be considered when approving a FLSA settlement agreement, "district courts in this circuit typically employ considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*." *Id*. at *3 (citations omitted). And so, to approve a FLSA settlement agreement, the Court must find that: (1) there are FLSA issues actually in dispute; (2) the settlement agreement is fair and reasonable; and (3) the proposed attorneys' fees, if included in the agreement, are reasonable. *See Duprey*, 30 F. Supp. 3d at 408 (citations omitted). These factors are most likely to be found where there is an "assurance of an adversarial context" and the employee is "represented by an attorney who can protect [her] rights under the statute." *Lynn's Food Stores*, 679 F. 2d at 1354.

To determine whether a *bona fide* FLSA dispute exists, "courts examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement." *Duprey*, 30 F. Supp. 3d at 408 (citations omitted). This Court has found *bona fide* FLSA disputes to exist where a defendant denies wrongdoing, disputes employee misclassification, or asserts an affirmative defense. *See, e.g.*, *De La Cruz v. Chopra*, 2018 WL 2298717, at *2 (D. Md. May 21, 2018); *Tomeh v. Veriphyr, Inc.*, 2022 WL 1422897, at *2 (D. Md. May 5, 2022). Once the Court determines that a *bona fide* FLSA disute exists, the Court must then assess the proposed settlement agreement for fairness and reasonableness, taking into consideration: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion; (4) the experience of counsel who represented the plaintiffs; (5) the opinions of counsel; and (6) the probability of plaintiff's success on the merits and the amount of the settlement in relation to the potential recovery. *See De La Cruz*, 2018 WL 2298717, at *2 (citations omitted).

## B. Attorneys' Fees

The FLSA provides that a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). The Fourth Circuit has explained that "[t]here are two main methods for calculating the reasonableness of attorney' fees—the lodestar method and the percentage-of-recovery method"—and that a "district court may choose the method it deems appropriate based on its judgment and the facts of the case." *McAdams v. Robinson*, 26 F.4th 149, 162 (4th Cir. 2022).

When calculating an award of attorneys' fees, "the Court must determine the lodestar amount, defined as a 'reasonable hourly rate multiplied by hours reasonably expended.'" *Lopez v. XTEL Constr. Grp., LLC*, 838 F. Supp. 2d 346, 348 (D. Md. 2012) (quoting *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008)); *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990). An hourly rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see also Thompson v. U.S. Dep't of Hous. & Urban Dev.*, No. 95-309, 2002 WL 31777631, at *6 n.18 (D. Md. Nov. 21, 2022).

"In the Fourth Circuit, 'the percentage-of-recovery approach is not only permitted, but is the preferred approach to determine attorneys' fees' in class actions." *Starr v. Credible Behavioral Health, Inc.*, 2021 WL 2141542, at *5 (quoting *Savani v. URS Pro. Sols. LLC*, 121 F. Supp. 3d 564, 568 (D.S.C. 2015). In this regard, this Court has held that the percentage-of-recovery approach "aligns the interests of class counsel and class members because it ties the attorneys' award to the overall result achieved rather than the hours expended by the attorneys." *Id.* at * 1. District courts in this Circuit have analyzed the following seven factors in determining whether a requested percentage of attorneys' fees is reasonable: (1) the results obtained for the class; (2) the quality, skill and efficiency of the attorneys involved; (3) the risk of nonpayment; (4) objections by members of the class to the settlement terms and/or fees requested by counsel; (5) awards in similar cases; (6) the complexity and duration of the case; and (7) public policy. *See Feinberg v. T. Rowe Price Grp., Inc.*, 610 F. Supp. 3d 758, 771 (D. Md. 2022); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 682 (D. Md. 2013). Courts need not apply the factors in a "formulaic way," and may weigh the factors as appropriate for a particular case. *Singleton*, 976 F. Supp. 2d at 682.

10

IV.     ANALYSIS

The parties request that the Court approve the Settlement Agreement upon the grounds that: (1) the Settlement Agreement is fair and reasonable compromise of a *bona fide* FLSA dispute and (2) the attorneys' fees and costs recouped by Plaintiffs' counsel are reasonable.  *See generally* ECF No. 44.  For the reasons set forth below, and stated during the fairness hearing, the Court: (1) GRANTS the Plaintiffs' consent motion for approval of the Settlement Agreement (ECF No. 44); (2) APPROVES the Settlement Agreement; (3) AWARDS the Plaintiffs' $8,867.60 in damages; and (4) AWARDS Plaintiffs' counsel of $5,000.00 in attorneys' fees and $1,132.40 in costs.

        A.  **The Parties Have Shown That The Settlement Agreement Reflects A Reasonable Compromise Of A *Bona Fide* FLSA Dispute**

            1.  **There Is A *Bona Fide* FLSA Dispute**

The parties have shown that the Settlement Agreement reflects a *bona fide* FLSA dispute. While the Fourth Circuit has not directly addressed the factors to be considered when approving a FLSA settlement agreement, this Court has routinely considered three issues: (1) whether there are *bona fide* FLSA issues in dispute; (2) whether the settlement agreement is fair and reasonable; and (3) if included in the agreement, whether the proposed attorneys' fees are reasonable.  *See Duprey*, 30 F. Supp. 3d at 408 (citations omitted).  In determining the first issue—whether a *bona fide* FLSA dispute exists—the Court "examine[s] the pleadings in the case, along with the representations and recitals in the proposed settlement agreement."  *Id.* (citations omitted).  And so, this Court has found that a *bona fide* FLSA dispute exists where a defendant denies wrongdoing, disputes employee misclassification or asserts an affirmative defense.  *See, e.g.*, *De La Cruz*, 2018 WL 2298717, at *2; *Tomeh*, 2022 WL 1422897, at *2.  The parties have established that there is a *bona fide* FLSA dispute in this matter for several reasons.

First, the complaint and consent motion for approval of the Settlement Agreement establish that there is a *bona fide* FLSA dispute between the parties, because the parties disagree about the following issues: (1) the relevant legal standard governing the Plaintiffs' claims; (2) whether the Plaintiffs performed work that was unrelated to their tipped occupation and the length of time the Plaintiffs allegedly spent performing non-tipped work; (3) whether the Plaintiffs would be required to arbitrate their claims on an individual basis; and (4) whether the Plaintiffs' claims are time-barred by the statute of limitations.  *See* ECF No. 44 at 6-8.  And so,

11

the Court is satisfied that the parties have a *bona fide* dispute as to whether the Plaintiffs are entitled to any relief for minimum wages. *See id.*; *Lynn's Food Stores*, 679 F.2d at 1354; *De La Cruz*, 2018 WL 2298717, at *2.

### 2. The Settlement Agreement Reflects A Fair And Reasonable Compromise Of The Parties' *Bona Fide* FLSA Dispute

The Court is also satisfied that the Settlement Agreement reflects a fair and reasonable compromise of the parties' *bona fide* FLSA dispute. To determine whether the proposed Settlement Agreement at issue here is fair and reasonable, the Court considers: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion; (4) the experience of counsel who represented the Plaintiffs; (5) counsel's opinions; and (6) the probability of the Plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery. *See Duprey*, 30 F. Supp. 3d at 409. These factors support a finding that the Settlement Agreement is fair and reasonable for several reasons.

First, with regard to the extent of discovery and the stage of these proceedings, the parties acknowledge that formal discovery has not begun in this case. ECF No. 44 at 9. But the parties have engaged in informal discovery, in an effort to resolve the FLSA dispute. *Id*. In this regard, the Defendants have produced all data and information necessary to complete an analysis and calculation of the Plaintiffs' damages, including the Plaintiffs' time and pay records to examine the total hours each Plaintiff worked and separate the hours paid at the tip credit rate and the minimum wage rate. *Id*. at 4 and 9. In addition, the parties inform the Court that they have engaged in numerous and lengthy discussions and a comprehensive exchange of information regarding the damage calculations, the Plaintiffs' claims and the Defendants' defenses. *See id*. at 4. The parties also state that they engaged in settlement negotiations between April 2024 and December 2024. *Id*. And so, the extent of informal discovery that has taken place in the case to date weighs in favor of finding that the proposed Settlement Agreement is fair and reasonable.

Second, the stage of the proceedings, including the complexity, expense and likely duration of the litigation or arbitration, also favors approval. As previously discussed, there are several factual and legal issues in dispute in this case. *See id*. at 6-8. Given this, the parties represent to the Court that, if litigation or arbitration were to proceed, the parties would

12

"certainly engage in complex, costly and protracted wrangling, and in all probability, it would be years before these disputes were resolved." *Id*. at 9.

Third, the Court observes that there is no suggestion of fraud or collusion in this case. The parties state that the Settlement Agreement is the product of arms-length negotiations by experienced counsel. *Id*. at 10; *see, e.g., Hager v. Omnicare, Inc*., No. 5:19-cv-00484, 2021 WL 5311307, at *7 (S.D. W.Va. Nov. 15, 2021) (approving a FLSA settlement in part because "[l]itigation was 'hotly contested' and the parties negotiated the settlement at arms-length") (citation and internal quotation marks omitted).

Fourth, the considerable experience of counsel in this case in litigating FLSA matters also weighs in favor of accepting the Settlement Agreement. The Plaintiffs are represented by experienced attorneys in this matter, including Lori M. Griffin, of the Lazzaro Law Firm, who has over 11 years of legal experience as an employment attorney. *See* ECF No. 44-2 at ¶¶ 6-7. In addition, the Lazzaro Law Firm has litigated over 100 certified collective and class actions against small and large employers and has recovered over $60 million in settlement payments on behalf of employees. *See id*. at ¶¶ 2-5.

Lastly, the probability of the Plaintiffs' success on the merits, and the proposed settlement amount in relation to the potential recovery in this case, also demonstrate that the Settlement Agreement is fair and reasonable. The parties dispute, among other things, whether some of the Plaintiffs' claims are subject to arbitration, or are barred by the statute of limitations. *See* ECF No. 44 at 10. The parties further maintain that taking their claims though arbitration and litigation which would likely have to take place on an individualized basis would consume valuable time and resources and expose them to unnecessary litigation risk. *Id*. And so, there are litigation risks for both parties if this matter proceeds.[2] The parties also assert that "but for this settlement, there is a legitimate risk that the Plaintiffs may recover nothing." ECF No. 44 at 13. And so, the Plaintiffs' probability of the Plaintiffs' success on the merits, and the proposed settlement amount reflects that the Settlement Agreement, represents a fair and reasonable compromise and also weighs in favor of approving the Settlement Agreement.

---

[2] The parties also represent to the Court that the Plaintiffs in this matter will recover more than the average class action plaintiff recovers in similar cases. *See* ECF No. 44 at 13-14 (citing *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000)).

13

For the aforementioned reasons, the Court is also satisfied that the Settlement Agreement reflects a reasonable compromise of a *bona fide* FLSA dispute, given the inherent risks and costs associated with further litigation of this matter. *See Saman*, 2013 WL 2949047, at *5; *De La Cruz*, 2018 WL 2298717, at *1. And so, the Court will APPROVE the Settlement Agreement as to the Plaintiffs' damages.

### B. The Award Of Attorneys' Fees And Costs Is Reasonable

As a final matter, the Court is also satisfied that the attorneys' fees and costs that the Defendants have agreed to pay to Plaintiffs' counsel are reasonable. Because the Settlement Agreement includes an award of attorneys' fees and costs, the Court independently considers whether these fees and costs are reasonable. *Lynn's Food Stores*, 679 F.2d at 1354. Here, the Settlement Agreement provides for the payment of attorneys' fees in the amount of $5,000.00 and costs in the amount of $1,132.40. ECF No. 44 at 5. The award of these attorneys' fees and costs are reasonable for several reasons.

First, the attorneys' fees are reasonable in light of the lodestar amount for this case. When calculating an award of attorneys' fees, "the Court must determine the lodestar amount, defined as a 'reasonable hourly rate multiplied by hours reasonably expended.'" *Lopez*, 838 F. Supp. 2d at 348 (quoting *Grissom v*, 549 F.3d at 320-21); *Plyler*, 902 F.2d at 277. An hourly rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see also Thompson v. U.S. Dep't of Hous. & Urban Dev.*, No. 95-309, 2002 WL 31777631, at *6 n.18 (D. Md. Nov. 21, 2022).

Here, Plaintiffs' counsel's lodestar amount of $17,000.00 is higher than the $5,000.00 award of attorneys' fees that the Plaintiffs' counsel will recover. In this matter, Attorney Griffin, represents to the Court that she billed 20 hours at $475.00 per hour and that Attorney Anthony J. Lazzaro billed 15 hours at a rate of $500.00 per hour. ECF No. 44-2 at ¶ 45. The evidence before the Court shows that Plaintiffs' counsel's hourly rates are reasonable and comparable to the hourly rates for attorneys of similar experience in the Southern District of Ohio. *See* ECF No. 47 at ¶ 46 (citing cases in Ohio district courts and other Sixth Circuit courts where the hourly rates of Attorney Lazarro and Attorney Griffin have been approved).

The Court is also satisfied that the award of attorneys' fees is reasonable considering the percentage-of-recovery approach. Under the percentage-of-recovery approach, district courts in

14

this Circuit have analyzed the following seven factors in determining whether a requested percentage of attorneys' fees is reasonable: (1) the results obtained for the class; (2) the quality, skill and efficiency of the attorneys involved; (3) the risk of nonpayment; (4) objections by members of the class to the settlement terms and/or fees requested by counsel; (5) awards in similar cases; (6) the complexity and duration of the case; and (7) public policy. *See Feinberg*, 610 F. Supp. 3d at 771; *Singleton*, 976 F. Supp. 2d at 682. All seven factors weigh in favor of finding that the award of attorneys' fees in this matter is reasonable.

First, the attorneys' fees are reasonable considering the results obtained for the Plaintiffs, the risk of non-payment and the complexity of the case, because there is a legitimate risk that the Plaintiffs may prevail on their claims. *See* ECF No. 44 at 13 and 15. Second, Plaintiffs' counsel has significant experience litigating wage and hour actions. *See, e.g.*, ECF No. 44-2 at ¶¶ 1-14. The parties also represent to the Court that the Plaintiffs do not object to the attorneys' fees award and that this Court has approved attorneys' fees awards that are one-third of the total settlement amount in similar cases. *Id*. at 15 (citing cases). In addition, public policy supports the requested attorneys' fees. *See Graham v. Famous Dave's of Am., Inc*., No. CV DKC 19-0486, 2022 WL 17584274, at *13 (D. Md. Dec. 12, 2022) (citation omitted). In sum, all factors demonstrate that the attorneys' fees requested are fair and reasonable.

Lastly, the parties have also shown that the costs to be recouped by the Plaintiffs' counsel under the Settlement Agreement are reasonable. The Plaintiffs' attorneys represent to the Court that they incurred $1,132.40 for the following expenses:

- $405.00 incurred for the filing of the Complaint;
- $100.00 for the filing of Lori M. Griffin's Pro Hac Vice Motion;
- $52.40 for miscellaneous litigation expenses; and
- $575.00 for a public records search.

ECF No. 44-2 at ¶ 46. The parties state that the Settlement Agreement will cover these reasonable costs. ECF No. 44 at 5 and 19. Given this, the Court is satisfied that these costs accurately reflect the litigation expenses incurred by Plaintiffs' counsel in this case. And so, the Court will APPROVE the award of attorneys' fees in the amount of $5,000.00 and the award of costs in the amount of $1,132.40.

## V.   CONCLUSION

In sum, the Court is satisfied that the Settlement Agreement constitutes a fair and reasonable compromise of the parties' *bona fide* dispute under the FLSA and that the attorneys' fees and costs provided for in the Settlement Agreement are reasonable.  And so, for the foregoing reasons, the Court:

(1) **GRANTS** the Plaintiffs' consent motion for approval of the Settlement Agreement (ECF No. 44);

(2) **APPROVES** the Settlement Agreement as a fair and reasonable resolution of the parties' *bona fide* FLSA dispute;

(3) **AWARDS** the Plaintiffs **$8,867.60** in damages; and

(4) **AWARDS** Plaintiffs' counsel **$5,000.00** in attorneys' fees and **$1,132.40** in costs.

The Court shall retain jurisdiction over this matter to enforce the terms of the Settlement Agreement.

A separate Order shall issue.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby<br>
LYDIA KAY GRIGGSBY<br>
United States District Judge

16